Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ**, individually, and on behalf of all others similarly situated, | § § § |
| Plaintiff, | § Civil Action No.:  3:25-cv-138 |
| v. | § **CLASS ACTION COMPLAINT** |
| **CREDO LEGAL SERVICES, P.A.**, a Florida Professional Association and **KERRY TIBOR JR.,** | § § **DEMAND FOR JURY TRIAL** § § § |
| Defendants. | § § |

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants CREDO LEGAL SERVICES, P.A. (hereinafter "Credo") and KERRY TIBOR JR., (hereinafter "Tibor") to stop their illegal practice of placing unsolicited telemarketing calls to the telephones of consumers whose phone numbers were registered on the National Do Not Call Registry, and to obtain redress for all persons injured by their conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class on behalf of himself and other persons who received illegal telemarketing calls from and or on behalf of Defendants Credo and Tibor.  Plaintiff alleges as follows upon personal

1

knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

1.      As a part of their marketing, Defendant Credo sent thousands of unsolicited ringless voicemails through its intake center Debt Resolution Center (hereinafter "DRC") to consumers whose phone numbers were registered on the National Do Not Call Registry.

2.      The unsolicited ringless voicemails were sent using an artificial or prerecorded voice.

3.      Defendant Credo is operated by Defendant Tibor.

4.      Defendant Tibor authorized such calls to be made for economic gain.

5.      Defendants Credo or Tibor did not obtain consent prior to sending these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6.      Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

7.      The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

8.      The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

9.      By sending these unsolicited ringless voicemails to people who have registered their phone numbers on the national do-not call database, Defendants Credo and Tibor violated the privacy and statutory rights of Plaintiff and the Class.

10.    Plaintiff therefore seeks an injunction requiring Defendants Credo and Tibor to stop their unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

11.    Plaintiff Erik Salaiz is a natural person residing in El Paso, Texas.

12.    Defendant Credo is a professional association organized and existing under the laws of Florida.

13.    Defendant Tibor is an individual residing in Florida.

14.    Defendants Credo and Tibor are hereinafter referred to collectively as "Defendants".

15.    Unnamed Party DRC is an unidentified telemarketing and/or intake company that makes solicitation phone calls at the instruction, direction, and oversight of Defendants Credo and Tibor.

## JURISDICTION AND VENUE

16.    This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

17.    This Court has specific personal jurisdiction over Defendants because they caused the violating calls to be sent to Plaintiff in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

19.    Defendant Credo operates as a law firm based out of Jacksonville, Florida.

20.    Defendant Tibor controls and operates Defendant Credo.

21.    DRC sent out unsolicited ringless voicemails with an artificial or prerecorded voice soliciting Plaintiff and the putative class for Defendant Credo's legal services.

3

22.     Defendants failed to obtain consent from recipients, nor did they check the National Do Not Call registry.

## PLAINTIFF'S FACTUAL ALLEGATIONS

23.     Plaintiff is a natural person who resides in this District.

24.     Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

25.     Plaintiff's telephone number XXX-929-XXXX is a residential number and is registered to a cellular telephone service.

26.     Plaintiff's telephone number XXX-929-XXXX is used for personal purposes and is not associated with business.

27.     Plaintiff successfully registered his telephone number XXX-929-XXXX on the National Do-Not-Call Registry on April 6, 2022, which was more than 31 days prior to receiving the alleged calls in this complaint.

28.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

29.     Defendant Credo offers legal representation for debt relief services to consumers nationwide according to its website https://credolegal.com.

30.     Defendant Tibor controls and operates Defendant Credo.

31.     As part of Defendant Credo's telemarketing campaign, Defendant Tibor contracted with DRC to make unsolicited phone calls to consumers on behalf of Credo because Defendants Credo and Tibor are barred from making these calls themselves and in an effort to evade ethics violations.

32.     Defendant Credo's telemarketing campaign consists of sending ringless voicemails using an artificial or prerecorded voice.

33.     A ringless voicemail is a technology that allows users to send a voicemail message to a recipient's voicemail without ringing their phone.

34.     On November 21, 2022, the Federal Communications Commission ("FCC") ruled that ringless voicemails are subject to the TCPA and require consumer consent.

35.     The FCC found that ringless voicemails are "calls" made using an artificial or prerecorded voice.

36.     Defendants Credo and Tibor had knowledge that DRC uses an artificial or prerecorded voice in connection with Credo's telemarketing campaign.

37.     Upon information and belief, Defendant Credo and/or Tibor provide DRC with calling lists to thousands of consumers residential phone numbers.

38.     Upon information and belief, Defendant Credo and/or Tibor instruct DRC to call the phone numbers on the calling lists provided by Defendants.

39.     Upon information and belief, Defendant Credo and/or Tibor provide DRC with qualifications a consumer must meet to qualify for Credo's debt relief services.

40.     Upon information and belief, Defendant Credo and/or Tibor authorizes DRC to act as Credo's agent by instructing DRC on how much to charge a new client and sending the new client a retainer agreement to sign on behalf of Defendant Credo.

41.     Upon information and belief, Defendant Credo and/or Tibor pay DRC a commission fee for every new client they retain for Defendants.

42.     DRC is a fictitious name being used and Plaintiff is unaware of their true identity however will be revealed during discovery.

43.     Upon information and belief, DRC and Defendants Credo and Tibor have generated substantial profit gains by violating the TCPA and generating new clients through illegal telemarketing.

44.     Despite Plaintiff's phone number XXX-929-XXXX being registered on the National Do Not Call Registry, Plaintiff fell victim to Defendants marketing campaign by receiving unsolicited robocalls.

45.    On March 11, 2025, Plaintiff received at least two ringless voicemails to his phone number XXX-929-XXXX from DRC on behalf of Defendants.



46.    **Call #1 –** Plaintiff listened to the voicemail and heard an artificial or prerecorded voice that stated,

"May from PHD LLC underwriting at 844-800-2334.Uhm, I have some really great news I am able to pre-qualify you for the full $35,000 in relief the exact amount you requested on your application there is a possibility that you can qualify for even more. This program has affordable rates and super manageable payments. Oh, and I also saw that you're approved for another hardship program too so we should definitely chat about both options. Please give my team a quick call at 844-800-2334 so we can go over any questions you may have. Again, that's 844-800-2334 anytime today would be great and have a blessed day."

47.    **Call #2 -** Plaintiff listened to the voicemail and heard an artificial or prerecorded voice that stated,

PHD LLC underwriting at 844-800-2334. Uhm, I have some really great news. I was able to pre-qualify you for the full $35,000 in relief. There is a possibility that you can qualify for even more. This program has affordable rates and super manageable payments. Oh, and I also saw that you're approved for another hardship program too so we should definitely chat about both options. Please give me a quick call 844-800-2334. Again, that is 844-800-2334. I look forward to your call. Have a blessed day.

48.    The artificial or prerecorded voice in the alleged calls left the same call back number 844-800-2334 instructing Plaintiff to call back.

49.    Plaintiff did not request information regarding a hardship program and has not applied for any type of loan in 2025.

50.    The artificial or prerecorded voice in the alleged calls does not identify Defendants Credo or Tibor.

51.     The alleged calls Plaintiff received were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

52.     DRC spoofed the caller IDs on the alleged calls they made to Plaintiff.

53.     Plaintiff became annoyed and frustrated by the alleged calls.

54.     On the same day, March 11, 2025, Plaintiff called 844-800-2334 the number left in the voicemails as it was the only way to identify who was behind these ringless voicemails.

55.     Plaintiff was connected to an agent with DRC named Erwuin.

56.     Plaintiff advised Erwiun that he was responding to the voicemails he received from them regarding a loan.

57.     Erwuin advised Plaintiff the reason for the calls was because Plaintiff might be eligible for a debt relief program.

58.     Erwuin collected Plaintiff's name, phone number, email address, mailing address, date of birth, and social security number in order to perform a sofit credit check to verify Plaintiff's debts.

59.     During the call with Erwuin, Plaintiff could hear another agent in the background answering calls to consumers that upon information and belief, received the same and/or similar ringless voicemails as Plaintiff from DRC on behalf of Defendants.

60.     Plaintiff could hear the other agent answering calls following a script that stated, "Debt Resolution Center whom do I have the pleasure of speaking with today?" and "The reason for the call is because you might be eligible for a debt relief loan program."

61.     Upon information and belief, Defendants telemarketing campaign has reached hundreds if not thousands of consumers' residential telephone numbers nationwide.

62.     Erwuin solicited Plaintiff for a debt resolution program on behalf of Defendant Credo.

63.    Erwuin advised Plaintiff that Plaintiff would make a monthly payment of $600.25 for twenty-four months towards the debt resolution program.

64.    While on the call with Erwuin, Plaintiff received an email from Erwuin from email support@credolegal.com that contained a retainer agreement from Defendant Credo for plaintiff to sign.

BoldSign Document ID: 9b0fc9c0-a42d-4a2c-9dc4-14e78b108d20



Phone: 212-461-4026
support@credolegal.com
PO Box 105562
Atlanta, Georgia 30348-5562
credolegal.com

**CREDO LEGAL SERVICES, P.C.**
**CONSUMER ENGAGEMENT & LEGAL RETAINER AGREEMENT**

Re: New Representation
Proposed Client Name: Erik Salaiz
File No.: 2248916936

Dear Mr./Ms. Salaiz,

Thank you for speaking with Credo Legal Services, P.C. ("CLS") in connection with the hardships that you're currently experiencing related to your creditors including without limitation whether you are, in fact, the owner of those specific debts and are responsible for them, any delinquencies related thereto, and your ability to make payment on them. As we discussed, Credo Legal Services, P.C. focuses on protecting consumer rights, and specifically, assisting consumers in your situation with exercising those rights. At your request and for your review, this document (the "Engagement Letter") outlines the scope, terms and conditions of the proposed engagement for which you would retain CLS and the services that CLS may perform on your behalf should you decide to proceed with retaining CLS to perform the services outlined herein (the "Engagement").

**SIGNATURE PAGE**

Name:  _____
Signature:  _____
Date:  _____

**CREDO LEGAL SERVICES, P.C.**

_____
Kerry M. Tibor, Esq., President

PO Box 105562
Atlanta, Georgia 30348-5562
Support@Credolegal.com
Tel.  212-461-4026

8

BoldSign Document ID: 9b0fc9c0-a42d-4a2c-9dc4-14e78b108d20

**Electronic Payment Authorization**

**Bank Name:**
**Name on Account:**          ERIK D SALAIZ
**Account Type:**             Checking Account

          Other (specify: {       })

**Routing Number:**
**Account Number:**

**Next Payment Date:**        Mar 14, 2025

**Recurring Payment Start Date:** Mar 14, 2025

**Amount:** $600.25

By signing below, I authorize and permit CLS or their designees to initiate electronic funds transfers via an
Automated Clearing House system (ACH) from my account listed above. I will also provide CLS with a
voided check or savings deposit slip.

65.     Plaintiff asked Erwuin who Defendant Credo was and Erwuin stated to Plaintiff, "that's our law firm."

66.     The retainer agreement Plaintiff received from Erwuin identified Defendants Credo and Tibor.

67.     On March 12, 2025, Plaintiff received another email from support@credolegal.com that contained a copy of a retainer agreement from Defendant Credo with Plaintiff's electronic initials and signature.

68.     Plaintiff never executed the retainer agreement received from Credo and was fraudulently executed by Defendant Credo and/or DRC with Plaintiff's electronic initials and signature without Plaintiff's consent in attempt to charge Plaintiff a fee of $600.25.

69.     Upon information and belief, Defendants Credo and Tibor employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

70.     Upon information and belief, neither Defendants Credo nor Tibor have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through its agents such as DRC.

71.     The     https://direct.sos.state.tx.us/telephone/telephonesearch.asp     site ("Texas Registration Database") does not contain neither Defendants' registration.

72.     Neither Defendants qualify for an exemption under § 302.053.

9

73.    Plaintiff never provided his prior express written consent to receive any of the alleged calls.

74.    The alleged calls were nonconsensual encounters that were not made for emergency purposes.

75.    The alleged calls were made to Plaintiff for the purpose of encouraging Defendant Credo's legal services.

76.    Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

77.    Upon information and belief, the alleged calls were placed without Defendants' training their agents on the use of an internal do-not-call policy.

78.    Plaintiff has never been a client of Defendants Credo or Tibor and never knew who Defendants were prior to receiving the alleged calls.

79.    Plaintiff was harmed by the alleged calls.

80.    Plaintiff was temporarily deprived of legitimate use of his phone because his privacy was improperly invaded. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, and were a nuisance and disturbed the solitude of Plaintiff.

## BASIS FOR LIABILITY

81.    Plaintiff realleges paragraphs one through eighty and incorporates them herein as if set forth here in full.

82.    Even if Defendants Credo or Tibor did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

83.    Plaintiff realleges paragraphs one through eighty-two and incorporates them herein as if set forth here in full.

10

84.    Defendants authorized and hired DRC to generate prospective customers through illegal telemarketing calls.

85.    Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

86.    In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

87.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

88.    DRC solicited Plaintiff on behalf of Defendants. Accordingly, DRC had Defendants Credo and Tibor's actual authority to solicit Plaintiff through illegal telemarketing calls.

## **APPARENT AUTHORITY**

89.    Plaintiff realleges paragraphs one through eighty-eight and incorporates them herein as if set forth here in full.

90.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and

pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

91.    Defendants authorized DRC to generate prospective business for Credo through illegal telemarketing.

92.    DRC called and solicited Plaintiff for debt relief services on behalf of the Defendants. The integration of their sales efforts was so seamless that it appeared to Plaintiff that DRC and Defendants appeared to be acting together as the same company.

93.    Plaintiff reasonably believed and relied on the fact that DRC had received permission to sell, market, and solicit the services of Defendant Credo.

94.    As a direct and proximate result of DRC's illegal phone calls – which were made on behalf of and with the apparent authority of the Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

**RATIFICATION**

95.    Plaintiff realleges paragraphs one through ninety-four and incorporates them herein as if set forth here in full.

96.    Defendants knowingly and actively accepted business that originated through the illegal calls placed by DRC.

97.     By accepting these contacts with the robocall victims, DRC "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of the Defendants, as described in the Restatement (Third) of Agency.

98.     DRC called Plaintiff to solicit him for debt relief services on behalf of Credo.

99.     Defendant Credo received Plaintiff as a new prospective client from DRC.

100.    Defendants' ratified DRC's TCPA violations by knowingly accepting the benefits of new clients and revenue despite the fact that the sale was generated through illegal calling.

101.    Defendants' further ratified DRC's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

102.    As a direct and proximate result of DRC's illegal phone calls, Plaintiff and Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

## PERSONAL LIABILITY OF DEFENDANT TIBOR

103.    Plaintiff realleges paragraphs one through one hundred and two and incorporates them herein as if set forth here in full.

104.    Upon information and belief Defendant Tibor refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendants Credo and Tibor financially.

105.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

106.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general

[tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity.*"* *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

107.    Upon information and belief, at all times material to the Complaint, acting alone or in concert with others, Defendant Tibor has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Credo including the acts or practices set forth in this Complaint.

108.    Upon information and belief, Defendant Tibor is the principal director and operator of Defendant Credo, controls the day-to-day operations of Defendant Credo and directed their representatives, employees, agents, salespersons, and or telemarketers to make TCPA violating phone calls to solicit Credo's services.

109.    Upon information and belief, Defendant Tibor is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

110.    Upon information and belief, Defendant Tibor is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter his behavior.  Defendant Tibor is the sole director of Defendant Credo and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Tibor has taken no steps to stop the behavior because this behavior benefits Defendants financially.

111.    Defendant Tibor should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and actively oversaw and directed this conduct.

112.    Defendant Tibor should be held liable because to do otherwise would simply allow him to dissolve Defendant Credo and set up a new corporation and repeat his conduct thus frustrating the purposes of the TCPA and DTPA.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE DEFENDANTS' ACTIONS

113.    Plaintiff realleges paragraphs one through one hundred and twelve and incorporates them herein as if set forth here in full.

114.    The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

115.    The calls harmed Plaintiff by trespassing upon and interfering with his rights and interests in his cellular telephone.

116.    The calls harmed Plaintiff by intruding upon his seclusion.

117.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## CLASS ALLEGATIONS

118.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) Defendants called and/or any entity making calls on behalf of Defendants (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

> **Texas Subclass**.  All persons in Texas who: (1) from the last 4 years to present (2) Defendants called any entity making calls on behalf of Defendants (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

119.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

120.    **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

121.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendants uniform wrongful conduct and unsolicited calls.

122.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

123.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply

16

to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on the Defendants conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

124.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether the unsolicited robocalls were caused by the Defendants;

    b.    Whether the unsolicited robocalls promoted Defendant Credo's products or services;

    c.    Whether the Defendants obtained written express consent prior to sending the unsolicited robocalls;

    d.    Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendants' conduct.

125.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

17

supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

126.    Plaintiff realleges paragraphs one through one hundred and twenty-five and incorporates them herein as if set forth here in full.

127.    Defendants' and/or their agents placed unsolicited phone robocalls to Plaintiff and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

128.    The calls were made for the express purpose of soliciting consumers for Defendant Credo's goods and services.

129.    When Plaintiff and the Class answered and/or listened to their voicemails, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

130.    As a result of their unlawful conduct, the Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendant to stop its illegal calling campaign.

131.    Defendants' and/or their agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

132.    If the court finds that the Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

//

//

**Second Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

133.    Plaintiff realleges paragraphs one through one hundred and thirty-two and incorporates them herein as if set forth here in full.

134.    The telephone numbers of Plaintiff and the Class are registered on the National Do Not Call Registry.

135.    Defendants' and/or its agents placed unsolicited phone calls to Plaintiff and the Class members' DNC registered telephones without having their prior written consent to do so.

136.    Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry 47 C.F.R. § 64.1200(c)(2).

137.    Defendants' soliciting phone calls were made for the commercial purpose of soliciting Defendant Credo's goods and services.

138.    As a result of its unlawful conduct, the Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

139.    Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

140.    Plaintiff also seeks a permanent injunction prohibiting the Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**Third Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

141.    Plaintiff realleges paragraphs one through one hundred and forty and incorporates them herein as if set forth here in full.

142.    Defendants sent and/or initiated illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

143.    Upon information and belief, the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing and/or initiation solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

144.    A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

145.    Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

146.    As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

147.    As a result of the Defendants' violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff ERIK SALAIZ, individually and on behalf of the Class, prays for the following relief:

A.    An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.    An order declaring that the Defendants' actions, as set out above, violate § 227(b) of the TCPA;

C.    An order declaring that the Defendants' actions, as set out above, violate § 302.101 of the Texas Business and Commerce Code;

D.      An order declaring that the Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

E.      An award of $1,500 per call in statutory damages arising from the TCPA § 227(b) for each intentional violation;

F.      An award of $1,500 per call in statutory damages arising from the TCPA §227(c) for each intentional violation;

G.      An order declaring that Defendant's actions, as set out above, violate the Texas Business and Commerce code willfully and knowingly;

H.      An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

I.      An injunction requiring the Defendants to cease sending all unlawful calls;

J.      An award of reasonable attorneys' fees and costs; and

K.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: April 21, 2025                    Respectfully submitted,


                                         By:  /s/ Mark L. Javitch
                                         Mark L. Javitch (California SBN 323729)
                                         JAVITCH LAW OFFICE
                                         3 East 3rd Ave. Ste. 200
                                         San Mateo CA 94401
                                         Telephone: (650) 781-8000
                                         Facsimile: (650) 648-0705
                                         mark@javitchlawoffice.com

                                         *Attorneys for Plaintiff and the Putative Class*